UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 25-40336 |
| | ) | |
| BREWER MACHINE & PARTS | ) | |
| | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**DEBTOR'S EMERGENCY MOTION FOR
AUTHORIZATION OF THE USE OF CASH COLLATERAL**

The Debtor, Brewer Machine & Parts (hereinafter the "Debtor"), by counsel, hereby moves the Court for entry of an Order authorizing the use of cash and cash equivalents in which the estate and an entity other than the estate may have an interest (the "Cash Collateral"). In support of this Motion, Debtor states as follows:

**Jurisdiction**

1. The Court has jurisdiction over this case and the subject matter of this Motion pursuant to 28 U.S.C. 1334 and 157(a) and the general order of reference issued by the United States District Court for the Western District of Kentucky.

2. Venue of this case in this Court is proper pursuant to 28 U.S.C. 1408 and 1409 of the Local Rules of the United States Bankruptcy Court for the Western District of Kentucky (the "Local Rules").

3. Resolution of this Motion is a core proceeding in which the Court is authorized to enter a final order by 28 U.S.C. 157(b)(2)(A), (M) and (O).

4.      The statutory basis for the relief requested by this Motion is 11 U.S.C. §§§ 105, 361, and 363. This Motion is brought pursuant to Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

## Background

5.      The Debtor is a Kentucky limited liability company located in Central City, Kentucky, that manufactures and services equipment for the saw mills.

6.      As of the filing date, the Debtor has cash in the approximate amount of $7,000.00 and receivables in the approximate amount of $52,500.00.

7.      The U.S. Small Business Administration has a claim against the Debtor arising from a loan in the approximate amount of $2,000,000.00. The loan is secured by:

> All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants include all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

The SBA's security interest is perfected by a UCC 1 dated filed March 1, 2022, with the Kentucky Secretary of State.

8.      CIT has a claim against the Debtor arising from a loan in the approximate amount of $23,139.90. The loan is secured by:

> All accounts, chattel paper, documents, instruments, general intangibles, payment intangibles, goods, inventory, investment property, rents, income, securities, fixtures and other property, now existing or hereafter arising, and any and all proceeds of the foregoing, including, without limitation, insurance proceeds. All machinery and equipment, whether now owned or hereafter acquired, together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed thereto and any and all proceeds of the foregoing, including, without limitation, insurance proceeds.

CIT's security interest is perfected by a UCC 1 dated filed July 12, 2022, with the Kentucky Secretary of State.

9. Mulligan Funding has a claim against the Debtor arising from a loan in the approximate amount of $248,855.80. The loan is secured by:

> All of Merchant's Accounts, Chattel Paper, Goods, Inventory, Equipment, Instruments, Reserves, Reserve Accounts, Investment Properties, Documents, General Intangibles, as such terms are defined in the UCC, as revised and in effect, all Future Receivables as herein defined, all other assets and personal property of the Merchant and all products and proceeds thereof.

Mulligan Funding's security interest is perfected by a UCC 1 dated filed July 23, 2024, with the Kentucky Secretary of State.

10. Apex Funding Gold, LLC has a claim against the Debtor arising from a loan in the approximate amount of $340,280. The loan is secured by:

> All accounts receivable now owned, or hereafter acquired, including without limitation; (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC ("a" and "b" collectively, the "Collateral")

Apex Funding Gold LLC's security interest is perfected by a UCC 1 dated filed December 26, 2024, with the Kentucky Secretary of State.

11. Rocket Capital has a claim against the Debtor arising from a loan in the approximate amount of $72,139. The loan is secured by:

> Accounts receivables and proceeds therefrom.

Rocket Capital's security interest is perfected by a UCC 1 dated filed March 6, 2025, with the Kentucky Secretary of State.

12. By encumbering the Debtor's "receivables" and "accounts", the Small Business Administration, CIT, Mulligan Funding, Apex Funding Gold, LLC, and Rocket Capital have an interest in "Cash Collateral" as that term is defined by 11 U.S.C. § 363(a).

## Relief Requested

13. Pursuant to Bankruptcy Rules 4001(b)(1)(A) and 9014, the Debtor seeks authority to be permitted to use Cash Collateral on an interim basis.

14. The Bankruptcy Code provides that a creditor is entitled to adequate protection of its interest in estate property when the automatic stay prevents it from realizing value of that interest. 11 U.S.C. § 362(d).

15. The Bankruptcy Code contemplates three forms of adequate protection, including "a cash payment or periodic cash payments to [the secured creditor], to the extent that the [automatic] stay… results in a decrease in the value of [the secured creditor's] interest in" the collateral the secured creditor is stayed from liquidating. 11 U.S.C. § 361(1).

16. Where an under secured creditor's collateral is declining in value, it is entitled, under § 361(d)(1) to cash payments or additional security in the amount of the decline. *See United Sav. Assn's of Tex. V. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 370 (1988).

17. But, the law is equally clear, at least since a unanimous Court handed down *Timbers of Inwood* more than thirty years ago, that creditors are not entitled to compensation, in the form of adequate protection or otherwise, for the pre-confirmation delay imposed by bankruptcy reorganization in realizing the value of its collateral. *See id.* At 379 ("That secured creditors do not bear one kind of reorganization cost hardly means that they bear none of them").

18. In the instant case, in order for the Debtor and this Chapter 11 case to succeed, the Debtor needs to be permitted to use the Cash Collateral on an interim basis as detailed in the Budget for a period not to exceed thirty (30) days from the Petition Date ("the Interim Period"). Irreparable harm to the Debtor, its estate, and its unsecured creditors will occur if the Debtor cannot operate in the Interim Period. Use of Cash Collateral preserves the value of the Debtor's assets, and without such use, the value of the Debtor's assets will immediately and substantially diminish. Absent authorization to use the Cash Collateral, there would be no reasonable prospect that the Debtor would be able to reorganize successfully in this Chapter 11 case. Prior to the end of the Interim Period, the Debtor will tender a proposed final order authorizing the use of Cash Collateral during the remaining pendency of this Chapter 11 case.

19. In support of its Motion, the Debtor has attached a projected budget for the next 30 days, attached hereto as Exhibit A.

16. The Debtor further asks the Court to grant, as adequate protection, the aforementioned Cash Collateral Creditors a lien on the same type of post-petition collateral, in the same validity and order of priority that existed prepetition, in an amount equal to the diminution in value of each Creditor's security caused by the Debtor's use of the Cash Collateral.

20. Entry of the tendered proposed order is in the best interests of the estate and its creditors because use of Cash Collateral will minimize disruption of the Debtor as an "ongoing concern" and increase the possibilities for a successful reorganization.

18. No previous motion for the relief sought herein has been made.

19. Accordingly, the Debtor requires a Court authorization to use cash collateral during the pendency of this Bankruptcy case.

WHEREFORE, the Debtor prays for an Order authorizing it to use Cash Collateral on the terms described herein, and for all other appropriate relief.

This the 4th day of January 2024.

/s/ Robert C. Chaudoin
ROBERT C. CHAUDOIN
519 E. 10th Avenue
P.O. Box 390
Bowling Green, Kentucky 42102

## Certificate of Service

This is to certify that on the 21st day of May 2025, I electronically filed the Emergency Motion for Authorization of Use of Cash Collateral through the ECF system. A true and exact copy of the attached *Emergency Motion for Authorization of the Use of Cash Collateral* was this the 21st day of May, 2025, placed in the U.S. Mail, post-prepaid addressed to the following:

U.S. Small Business Administration
2 North Street, Suite 320
Birmingham, AL  35203

CIT division of First-Citizens Bank & Trust Company
155 Commerce Way
Portsmouth, NH  03801

Mulligan funding LLC
4715 Viewridge Avenue suite 100
San Diego CA 92123-0000

Apex Funding Gold
2875 NE 191st unit 304
Miami FL 33180-0000

Rocket Capital NY, LLC
1250 E Hallandale Beach Blvd
Dayton OH 45424-0000


/s/Robert C. Chaudoin